IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2021

**STATE OF TENNESSEE v. CRYSTAL MICHELLE RICKMAN**

**Appeal from the Circuit Court for Madison County**
**No. 19-744    Donald H. Allen, Judge**

_____

**No. W2020-00882-CCA-R3-CD**

_____

Defendant, Crystal Rickman, was convicted by a jury of aggravated assault by strangulation or attempted strangulation and domestic assault. The trial court imposed an effective fifteen-year sentence, as a Range III persistent offender, to be served in the Department of Correction. On appeal, Defendant argues: that the evidence was insufficient to support her convictions; that she was denied a fair and impartial trial because of inadmissible hearsay; that she was denied the right to a fair and impartial trial because neither the State nor the defense called the victim to testify at trial; that the trial court erred by failing to instruct the jury as to the missing witness rule; that the trial court erred by not allowing her to call witnesses to testify at the motion for new trial hearing; and that her sentence was excessive. Following our review of the entire record and the briefs of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and D. KELLY THOMAS, JR., J., joined.

Marcus Mariah Reaves (at trial and on appeal), Denmark, Tennessee, and Gregory Gookin (at trial), Assistant Public Defender, Jackson, Tennessee, for the appellant, Crystal Michelle Rickman.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Jody Pickens, District Attorney General; and Joshua A. Dougan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

This case arises from Defendant's act of choking her mother during an argument. A Madison County grand jury indicted Defendant for aggravated assault involving strangulation or attempted strangulation and domestic assault. At Defendant's trial on these charges, the following evidence was presented: On the evening of June 2, 2019, Defendant, Crystal Rickman, was at home with her mother ("the victim") and James Lambert, a family friend, and they had all been drinking beer since mid-morning. Sometime between 4:00 and 5:00 p.m., Defendant and the victim got into an argument, and Defendant grabbed the victim by the throat and pinned her against the wall. At trial, Mr. Lambert demonstrated to the jury how Defendant choked the victim. He said that Defendant choked the victim "like you [were] trying to choke somebody out." According to Mr. Lambert, the victim said: "I can't breathe, I can't breathe. Quit, quit, quit." The victim told Mr. Lambert to call the police, but he hung up without talking to anyone when the victim changed her mind and told him not to call. Mr. Lambert then walked outside, and deputies arrived. The victim originally told the deputies that Mr. Lambert had assaulted her, and he was placed in handcuffs. However, his grandfather arrived and spoke to the victim, and she admitted that Defendant assaulted her.

Mr. Lambert gave a written statement to deputies in which he said that Defendant [c]onstantly beat [the victim] in the head, and then [he] called law enforcement." At trial, he admitted that he did not mention choking or strangling in his statement, but said that he saw Defendant choke the victim. He further testified: "Like I said, she had her against the wall. She had her hands - -The reason, she had her hands like that choking her, and then after that, they [were] cat fighting, and that's when I said, 'They're on their way,' and I walked outside." Mr. Lambert admitted that in addition to drinking beer, he had also smoked marijuana two or three times on the day of the offenses. However, he testified that he was not drunk, and the beer and marijuana did not affect his ability to perceive the events in question.

Deputy Sebastian Baker of the Madison County Sheriff's office was dispatched to Defendant's residence. He arrived at the house and saw Defendant, the victim, and Mr. Lambert walking up the driveway. Deputy Baker attempted to speak with the victim, but she seemed to be afraid to say anything, so he spoke with Mr. Lambert. He noticed that the victim had a laceration on the left side of her neck. After talking to Mr. Lambert, Deputy Baker placed the Defendant under arrest. He noticed that the Defendant appeared to be intoxicated due to her slurred speech and the smell of alcohol, and she admitted that she had been drinking. The victim was transported to the hospital by ambulance.

Based on this evidence, the jury convicted Defendant as charged in the indictment. The trial court imposed concurrent sentences of fifteen years for aggravated assault as a Range III offender and eleven months, twenty-nine days for domestic assault, to be served in confinement and consecutive to a six-year sentence in Madison County. The trial court also imposed the $2,500 fine fixed by the jury and ordered Defendant to pay court costs. For ease of analysis, we have combined and reordered several of the issues presented by Defendant in her brief.

**Analysis**

**I.      Sufficiency of the Evidence**

In related issues, Defendant contends that the court erred in denying the motion for judgment of acquittal and that the evidence was insufficient to support the convictions for aggravated assault involving strangulation or attempted strangulation and domestic assault. She further argues that she was denied a fair and impartial trial because of the alleged inconsistent testimony by Mr. Lambert. The State contends that the evidence is sufficient.

The standard of review for a trial court's denial of a motion for a judgment of acquittal is the same as the "standard that applies on appeal in determining the sufficiency of the evidence[.]" *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013). When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011).

Because the jury's verdict replaces the presumption of innocence with one of guilt, the burden on appeal is shifted onto Defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). Thus, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)). Questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *Bland*, 958 S.W.2d at 659). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own

inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

As charged in this case, aggravated assault occurs when a person intentionally or knowingly commits an assault, and the assault involved strangulation or attempted strangulation. T.C.A. § 39-13-102(a)(1)(A)(iv). Assault occurs when a person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury to another." T.C. A. § 39-13-101(a)(2). Strangulation occurs by "intentionally or knowingly impeding normal breathing or circulation of the blood by applying pressure to the throat or neck or by blocking the nose and mouth of another person." T.C.A. § 39-13-102(a)(2). A person commits domestic assault when he or she commits an assault against a domestic abuse victim, which includes an adult related by blood or adoption. *See* T.C.A. § 39-13-111(a)(4), (b). As charged in the indictment, assault is accomplished when a defendant intentionally, knowingly, or recklessly causes bodily injury to another. T.C.A. § 39-13-101(a)(1). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." T.C.A. § 39-11-106(a)(2).

Viewed in a light most favorable to the State, the proof showed that Defendant grabbed the victim, her mother, by the throat and pinned her against the wall during an argument. While Defendant was choking her, the victim said: "I can't breathe, I can't breathe. Quit, quit, quit." Deputy Baker observed a laceration on the left side of the victim's neck when he arrived on the scene. From this evidence, a reasonable juror could find Defendant guilty of aggravated assault and domestic assault. To the extent Defendant argues that Mr. Lambert's testimony was unsupported by the evidence and that she was denied a fair and impartial trial because of alleged inconsistent testimony by Mr. Lambert, we conclude that he did not give inconsistent testimony. More importantly, as the final arbiter of witness credibility, the jury accredited Mr. Lambert's testimony and convicted Defendant as charged. Defendant is not entitled to any relief on this issue.

## II. Hearsay Evidence

Defendant argues that the she was denied a fair and impartial trial because a portion of Mr. Lambert's testimony involved inadmissible hearsay. She further asserts that the admission of the testimony violated her right to confront witnesses in violation of *Crawford v. Washington*, 541 U.S. 36 (2004). The State responds that this issue is waived because Defendant failed to object to the testimony at trial and that she is not entitled to relief under plain error review.

At trial, Mr. Lambert testified as follows:

- 4 -

[T]hey put me in handcuffs at first because she told the officer – [the victim] told the officer that I done it, and then about that time, 15 or 20 minutes later, my grandfather showed up. He said, "you mind if I talk to her," talking to [the victim], and he said, "Take him out of the cuffs. He didn't do it. I just want you to tell them the truth." [Defendant] done it."

Defendant failed to lodge a contemporaneous objection to the testimony, which she admits in her brief. Therefore, this issue is waived. *See* Tenn. R. App. P. 36. Defendant requests plain error review of this issue; however, she has not addressed any of the plain error factors in her brief. We may only consider an issue as plain error when all five of the following factors are met:

> a.) the record must clearly establish what occurred in the trial court; b) a clear and unequivocal rule of law must have been breached; c) a substantial right of the accused must have been adversely affected; d) the accused did not waive the issue for tactical reasons; and e) consideration of the error is "necessary to do substantial justice."

*State v. Adkisson,* 899 S.W.2d 626, 641–42 (Tenn. Crim. App. 1994) (footnotes omitted). "[C]omplete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *State v. Donald Ray Smith*, 24 S.W.3d 274, 283 (Tenn. 2000). "When asserting plain error, the defendant bears the burden of persuading the appellate court that the trial court committed plain error and that the error was of sufficient magnitude that it probably changed the outcome of the trial." *State v. Michael Smith*, 492 S.W.3d 224, 232-33 (Tenn. 2016) (citing *State v. Hester*, 324 S.W.3d 1, 56 (Tenn. 2010)). In this case, we conclude Defendant has not established that she is entitled to plain error relief. Specifically, she has not demonstrated that a clear and unequivocal rule of law was breached, that a substantial right was adversely affected, or that consideration of the alleged error is necessary to do substantial justice. *See State v. Adkisson,* 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994); *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016); *Hester*, 324 S.W.3d at 56. Defendant is not entitled to relief on this issue.

### III. Failure to Call the Victim as a Witness

Defendant argues that she was denied the right to a fair and impartial trial because neither the State nor the defense called the victim to testify at trial. The State asserts that Defendant has waived this issue because she does not "cite to any legal authority or make any argument applying any authority to the facts of the case."

Tennessee Rule of Appellate Procedure 27(a)(7) requires that briefs contain arguments with regard to each issue presented that include "citations to the authorities ... relied on." *See also* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument [or] citation to authorities . . . will be treated as waived" on appeal). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Board of Prof'l Responsibility,* 301 S.W.3d 603, 615 (Tenn. 2010). *State v. Cross*, 362 S.W.3d 512, 526 (Tenn. 2012).

We point out that the State is not required to call any particular witness or to use all witnesses that are equally available to both sides. The only exception is when the State knowingly conceals a witness with exculpatory testimony. *Hicks v. State*, 539 S.W.2d 58 (Tenn. Crim. App. 1976); *Wright v. State*, 512 S.W.2d 650, 656 (Tenn. Crim. App. 1974). The State in this case did not conceal the victim, who was equally available to both parties. Defendant is not entitled to relief on this issue.

### IV.    Jury Instruction on Missing Witness

Defendant argues that because the victim did not testify at trial, the trial court erred by failing to instruct the jury as to the missing witness rule. The State responds that Defendant was not entitled to the instruction because the victim was equally available to both parties.

Initially, Defendant did not submit a written request for a missing witness instruction. Rule 30 of the Tennessee Rules of Criminal Procedure provides that requests for special jury instructions be in writing. *State v. Vickers,* 985 S.W.2d 1, 8 (Tenn. Crim. App. 1997); *State v. Brewer,* 932 S.W.2d 1, 15 (Tenn. Crim. App. 1996). In any event, Defendant is not entitled to relief on this issue. A defendant has a constitutional right to "a correct and complete charge of the law." *State v. Teel,* 793 S.W.2d 236, 249 (Tenn. 1990). A trial court has the duty to give a "complete charge of the law applicable to the facts of the case." *State v. Davenport,* 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing *State v. Harbison,* 704 S.W.2d 314, 319 (Tenn. 1986)). The denial of a request for a special jury instruction is error only when the trial court's charge does not fully and fairly state the applicable law. *State v. Cozart,* 54 S.W.3d 242, 245 (Tenn. 2001).

The pattern jury instruction for an absent material witness provides:

> When it is within the power of the state or the defendant to produce a witness who possesses peculiar knowledge concerning facts essential to that party's contentions and who is available to one side at the exclusion of the other, and the party to whom the witness is

available fails to call such witness, an inference arises that the testimony of such witness would have been unfavorable to the side that should have called or produced such witness. Whether there was such a witness and whether such an inference has arisen is for you to decide and if so, you are to determine what weight it shall be given.

T.P.I. - Crim. 42.16 (15th ed. 2011). To support a missing witness instruction, the party requesting it must establish "that 'the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for trial.'" *State v. Bigbee,* 885 S.W.2d 797, 804 (Tenn. 1994) (quoting *State v. Middlebrooks,* 840 S.W.2d 317, 334-35 (Tenn. 1992)) (internal citation and quotation marks omitted). To justify a missing witness instruction, "the witness who was not called must have not been equally available to both parties." *State v. Boyd*, 867 S.W.2d 330, 337 (Tenn. Crim. App. 1992); *State v. Marty M. Clark*, No. W2012-02507-330, 337, 2014 WL 287613, at *4-5 (Tenn. Crim. App., at Jackson, Jan. 24, 2014) *no perm. app. filed*. The instruction is inapplicable, "'where the only object of calling such witness would be to produce corroborative, cumulative, or possibly unnecessary evidence[.]'" *State v. Johnny Owens and Sarah Owens*, No. W2001-01397-CCA-R3-CD, 2002 WL 31624774, at *15 (Tenn. Crim. App., at Jackson, Nov. 8, 2002) *perm. app. denied* (Tenn. Feb. 18, 2001) (quoting *Dickey v. McCord*, 63 S.W.2d 714, 721 (Tenn. Ct. App. 2001)).

In this case, it was noted by the trial court at the Defendant's motion for new trial hearing that the victim was subpoenaed to testify at Defendant's trial, and she was present at trial. Therefore, the victim was equally available to both the State and Defendant. The trial court further said: "So I can't tell the jury that they have to presume that [the victim's] testimony was going to be unfavorable to the State, not under these circumstances." Defendant has not shown that she was entitled to a missing witness instruction, and she is not entitled to relief on this issue.

## V.    Motion for New Trial

Defendant argues that the trial court erred by not allowing her to call witnesses to testify at the motion for new trial hearing. The State again asserts that Defendant has waived this issue by failing to cite to legal authority or make any argument applying authority to the facts of this case. The State further contends that trial court was not required to allow the victim or any other witness to testify at the hearing.

At the motion for new trial hearing, defense counsel asked to call the victim and Defendant to testify. The trial court denied defense counsel's request. The record does not indicate what the testimony would have included. Initially, Defendant has waived this issue for again failing to cite to any authority. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim.

App. R. 10(b); *Sneed,* 301 S.W.3d at 615; *Cross*, 362 S.W.3d at 526. Additionally, as pointed out by the State, Defendant has not established that the trial court was required to allow witnesses to testify at the motion for new trial hearing. Tennessee Rule of Criminal Procedure 33(c)(1) provides that the trial court "*may allow* testimony in open court on issues raised in the motion for new trial." Tenn. R. Crim. P. 33(c)(1) (emphasis added). "Neither this provision nor any other of which we are aware requires the court to hear evidence on the motion." *State v. H. R. Hester*, No. E2006-01904-CCA-R3-DD, 2009 WL 275760, at *47 (Tenn. Crim. App., at Knoxville, Feb. 5, 2009), *aff'd and remanded on other grounds*, 324 S.W.3d 1 (Tenn. 2010). Rule 33(c)(2)(A) further states, "Affidavits in support of a motion for a new trial may be filed with the motion or an amended motion. The court shall consider any such affidavits as evidence." In *State v. Richard C. Taylor*, No. M2005-01941-CCA-R3-DD, 2008 WL 624913, at *35 (Tenn. Crim. App., at Nashville, Mar. 7, 2008) *no perm app. filed*, a panel of this court concluded that it was the defendant's responsibility to attach affidavits in support of his or her motion for a new trial, "as the court is not required to hear live witnesses; it is not the Defendant's choice." *Id.* This court found that it was "not error to preclude the Defendant's live witnesses from testifying or to reject a request for a continuance for the purpose of allowing the Defendant to prepare his live witnesses." *Id.* Based on the foregoing, we conclude that the trial court in this case was not required to allow Defendant to call witnesses in support of her motion for new trial. Defendant is not entitled to relief on this issue.

## VI.    Sentencing

Defendant argues that the sentence imposed by the trial court in this case was "[t]oo harsh." More specifically, she contends that the trial court should have imposed a ten-year sentence to be served in a long-term in-patient treatment program and that the trial court should have found her to be indigent and waived court costs and the $2,500 fine imposed by the jury. The State responds that the trial court properly sentenced Defendant to a fifteen-year sentence to be served in confinement and that the trial court properly ordered her to pay the fine and court costs.

Again, we point out that Defendant has failed to cite to any authority in her brief concerning this issue. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b), *Sneed,* 301 S.W.3d at 615; *Cross*, 362 S.W.3d at 526. In any event, the trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. In *State v. Caudle*, our Supreme Court clarified that the "abuse

of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012). Under the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.
> (8) The result of the validated risk and needs assessment conducted by the department [of correction] and contained in the presentence report.

Tenn. Code Ann. § 40-35-210(b).

In misdemeanor sentencing, the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). Thus, the trial court is afforded considerable latitude in misdemeanor sentencing. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The "*Bise* standard is the appropriate standard of review in misdemeanor sentencing cases." *State v. Gregory Gill*, No. W2018-00331-CCA-R3-CD, 2019 WL 549651, at *16 (Tenn. Crim. App., at Jackson, Feb. 11, 2019) *perm. app. denied* (Tenn. May 16, 2019).

Trial courts are "required ... to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* T. C. A. § 40-35-114; *see also Bise*,

380 S.W.3d at 701. Moreover, a trial court is "guided by - but not bound by - any applicable enhancement factors when adjusting the length of a sentence [,]" and its "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706.

In this case, the record reflects that the trial court in sentencing Defendant, considered all appropriate principles set forth in T.C.A. § 40-35-210(b). The trial court applied three enhancement factors, including Defendant's history of criminal convictions in addition to those necessary to establish the range; that Defendant, before trial or sentencing failed to comply with the conditions of a sentence involving release into the community; and that Defendant was on pretrial release in Case No. 19-743 when she committed the offenses in this case. T.C.A. § 40-35-114 (1), (8) and (13). Defendant does not contest the application of those factors, and the record reflects that they were appropriately applied. Defendant has nine prior felony convictions in addition to the seven used to enhance her to a Range III persistent offender. She also has twenty-two prior misdemeanor convictions, with at least five involving violence. The trial court noted that it gave great weight to Defendant's criminal history. The trial court also pointed out that Defendant committed several of her past offenses while on probation. The trial court reviewed the proposed mitigating factors and found that none applied in Defendant's case.

Defendant's conviction for aggravated assault is a Class C felony. As a Range III persistent offender, Defendant was subject to a sentencing range of ten to fifteen years. T.C.A. § 40-35-112(c)(3). She was subject to a potential sentence of eleven months, twenty-nine days for domestic assault, a Class A misdemeanor.

We conclude that the trial court properly sentenced Defendant. The trial court considered the relevant principles and sentenced Defendant to a within range sentence of fifteen years for aggravated assault and eleven months, twenty-nine days for domestic assault. Defendant argues that the trial court "should have seriously considered" the mitigating factors and sentenced her to the minimum sentence. However, the 2005 amendments to the Sentencing Act deleted appellate review of the weighing of mitigating and enhancement factors, so this issue is not appropriate to raise on appeal. *State v. Richard Tipton*, No. E2011-02354-CCA-R3-CD, 2012 WL 5422272, at *7 (Tenn. Crim. App., at Knoxville, Nov. 7, 2012) *no perm. app. filed*. We cannot conclude that the trial court abused its discretion by sentencing Defendant to an effective sentence of fifteen years.

Defendant also argues that the trial court erred by ordering her to serve her effective sentence in confinement. Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable

candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Instead, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing T. C. A. § 40-35-303(b)). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

When imposing a sentence of full confinement, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant [.]

T. C. A. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T. C. A. § 40-35-103(2), (4).

As a Range III offender, Defendant in this case was not considered a favorable candidate for alternative sentencing options. T.C.A. § 40-35-102(6). Since she received a fifteen-year sentence for aggravated assault, Defendant is not eligible for probation or community corrections. T.C.A. § 40-35-303(a); *State v. Grigsby*, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997)(a defendant must be eligible for probation to qualify for community corrections under the special needs provision). Even if Defendant had received a sentence eligible for probation or community corrections, the record supports the trial court's denial of any form of alternative sentencing. The trial court noted that it had considered Defendant's "physical and mental condition and social history, after considering the extensive prior history of [Defendant.]" The trial court concluded that Defendant would not abide by any terms of probation if given the opportunity. It appears from the record that the trial court denied Defendant's request for alternative sentencing on the fact that confinement was necessary to protect society and the victim by restraining Defendant, who has a long history of criminal conduct, and that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to Defendant. T.C.A. § 40-35-103(C). A trial court may deny alternative sentencing if it finds that any one of the factors found at T.C.A. § 40-35-103 apply. *State v. Christopher Allen*, No.

W2016-00505-CCA-R3-CD, 2017 WL 764552, at \*4 (Tenn. Crim. App., at Jackson, Feb. 24, 2017) *no perm. app. filed*; *State v. John Anthony Garrett*, No. E2012-01898-CCA-R3-CD, 2013 WL 5373156, at \*4 (Tenn. Crim. App., at Knoxville, Sept. 23, 2013) *no. perm. app. filed*. Accordingly, the trial court did not abuse its discretion in ordering Defendant to serve her sentence in confinement.

Finally, Defendant contends that because she is indigent, the trial court erred by imposing the jury's fine of $2,500 and court costs. The United States Constitution and the Tennessee Constitution prohibit excessive fines. U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); Tenn. Const. art. I, § 16 ("That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Moreover, any fine over $50 must be assessed by a jury. Tenn. Const. art. VI, § 14 ("No fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars.").

The imposition of fines is viewed as a portion of a defendant's sentence, and the standard of review is abuse of discretion. *See State v. Bryant*, 805 S.W.2d 762, 727 (Tenn. 1991); *see also Bise*, 380 S.W.3d at 707; *State v. Anthony Xen Maples*, No. E2013-00961-CCA-R3-CD, 2014 WL 1056671, at \*5 (Tenn. Crim. App., at Knoxville, Mar. 18, 2014), *no perm. app. filed*. The amount of any fine should be based upon the principles of sentencing, including "prior offenses, potential for rehabilitation, mitigating and aggravating circumstances, and other matters relevant to an appropriate sentence." *Bryant*, 805 S.W.2d at 765-66. "A defendant's ability to pay is a factor in the establishment of fines." *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996); *see* T.C.A. § 40-35-207(a)(7) (requiring upon the trial court's request that the presentence report include information to "assist the court in imposing a fine"). "[A]lthough the defendant's ability to pay a fine is a factor, it is not necessarily a controlling one." *State v. Marshall*, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). Furthermore, "a significant fine is not automatically precluded just because it works a substantial hardship on a defendant - it may be punitive in the same fashion incarceration may be punitive." *Id.*

A trial court's decision to assess or waive court costs rests within the discretion of the court. *State v. Black,* 897 S.W.2d 680, 683 (Tenn. 1995). Accordingly, this court will not reverse the lower court's decision in the "absence of evidence in the record which indicates that 'such discretion has been explicitly abused to the great injustice and injury of the party complaining.'" *Id.* at 684 (quoting *Douglas v. Estate of Robertson,* 876 S.W.2d 95, 97 (Tenn. 1994)); *see also* Tenn. R. App. P. 36(b). "There is no statutory or decisional authority to support the proposition that a trial court must waive court costs upon a finding of indigency." *Black*, 897 S.W.2d at 683; *see also State v. Betty L. Darden*, No. M2011-01697-CCA-R3-CD, 2012 WL 5947413, at \*2 (Tenn. Crim. App., at Nashville, Nov. 15, 2012) *no perm. app. filed*.

- 12 -

In this case, the trial court found that Defendant had the ability to pay her fine and court costs. The trial court stated:

> She'll be ordered to pay the $2,500 fine as imposed by the jury. And again, I think she's able to pay that fine when she's hired an attorney to represent her in that case now. So she's posted bond in two different cases, so I do find she has the ability to pay that $2,500 fine, plus the court costs.

As pointed out by the State, Defendant's mother, the victim, actually posted bond in Defendant's case and hired the attorney. However, the trial court was correct in determining that Defendant had access to that source of funding. Furthermore, the record reflects that Defendant received monthly Social Security disability benefits, which she has failed to establish could not be used to in part to pay her fine and court costs. Defendant has made no showing of her inability to pay, or otherwise demonstrated that the fine and court costs were inappropriate or excessive. *State v. Butler*, 108 S.W.3d 845, 852 (Tenn. 2003). Additionally, the fine was supported by Defendant's extensive criminal history and repeated inability to abide by her terms of probation. *State v. Eric D. Crenshaw*, No. W2015-01577-CCA-R3-CD, 2016 WL 1304805, at *8 (Tenn. Crim. App., at Jackson, Apr. 4, 2016) *no perm. app. filed* (Based on defendant's extensive criminal history and low potential for rehabilitation, the trial court did not abuse its discretion by imposing a $2,000 fine for felony theft and a $2,000 fine for evading arrest). As argued by the State, Defendant's inability to pay the fine would not be a controlling factor and would be outweighed by the factors supporting imposition of the fine. *Marshall*, 870 S.W.2d at 542. Additionally, Defendant has not shown that she would suffer "great injustice and jury" from paying the court costs. Defendant is not entitled to relief on this claim.

## CONCLUSION

After a thorough review of the record, we affirm the judgments of the trial court.

_____
JILL BARTEE AYERS, JUDGE